**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NAOMI BEN-PORATH, on behalf of herself and
all others similarly situated,

PLAINTIFF,

- AGAINST -

VASSAR COLLEGE,

DEFENDANT.

Index No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Naomi Ben-Porath ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant Vassar College ("Vassar," the "College," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

<u>**NATURE OF THE ACTION**</u>

1.      Colleges are in the market of selling educational services in exchange for tuition and fee payments.

2.      Students in the market are recruited and enticed to apply for college, accept admission, put down a deposit, enroll, register for classes, and then pay their tuition and fee bills at colleges.

3.      Higher education is no different from any other industry in as much as consumers (i.e., students) can shop between different educational products offered by competitive institutions before ultimately purchasing the product (i.e., applying, accepting admission, placing a deposit,

enrolling, registering, and making payments).

4.     The nature of those schools' educational services are conveyed by the colleges in a variety of means and methods.

5.     Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational product with access to a varied suite of services, activities, facilities and experiences.

6.     Vassar offers a campus-based product.

7.     Vassar offers campus-based, in-person educational services like access to campus, its facilities, its labs, its libraries, its buildings, its technologies, classroom instruction, face-to-face learning, and all the other benefits associated with Vassar's main campus in Poughkeepsie NY.

8.     Ms. Ben-Porath, a Vassar student during the Spring 2020 semester, paid tuition and fees to enroll in Vassar's on-campus program, including all the benefits and services associated therewith, until mid-way through the spring of 2020, when that experience was taken away from Plaintiff and other students at Vassar.

9.     Plaintiff Ben-Porath formed her contract with Vassar during her recruitment, application, admission, acceptance, enrollment, registration, and payment processes – as the contract formation stages.

10.     At each of those stages, Vassar represented or conveyed the nature of its educational services and those that students would expect to receive if they became enrolled, registered, and paying students.

11.     Plaintiff Ben-Porath formed her expectations and understood what Vassar would provide during those same contract formation stages – as well as past performance – and through representations from Vassar about the nature of the services they have and would provide.

12.     Plaintiff Ben-Porath formed her expectations and understood the intent of Vassar based on several important things: (1) official policy documents from Vassar, (2) marketing, advertising, and secondary materials used by or disseminated by Vassar, (3) Vassar's past performance in prior semesters, in decades prior to her enrollment, and during the beginning of the Spring 2020 semester itself, (4) Vassar's registration process conveyed physical locations of classes and other details about the classes being in-person when Plaintiff and similarly situated students searched for and selected classes, and (5) the fact that online-only educational services are economically less expensive and widely available.

13.     In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), Vassar, like many other colleges, transitioned to remote online-only instruction, canceled athletic and other on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.[1]

14.     As a result, all on-campus education, services, and amenities were no longer available to Vassar students.

15.     Despite the harsh reality that students could no longer enjoy the traditional and expected benefit of the bargain for which they pre-paid, Vassar refused to provide a pro-rated refund of tuition or fees tied to on-campus education, services, and amenities that were not available to students for a significant part of the Spring 2020 semester.[2]

16.     Accordingly, the students have lost the benefits of the bargain for services and the experience they reasonably expected and paid for but could no longer access or use.

---

[1] https://www.vassar.edu/president/community/2020/200312-coronavirus-update

[2] See List of schools who Offered Refunds in Fall 2020 (listing universities throughout the country have offered their students, in response to COVID-19, refunds, discounts, or tuition freezes to combat the financial burden imposed on their students in later semesters).

17.     By not giving prorated refunds for tuition or fees charged for on-campus education and services not provided, Vassar breached its contracts with students like Plaintiff.

18.     The circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services – or agree to take on the financial consequences of Vassar not being able to provide its educational services.

19.     Importantly, students like Plaintiff Ben-Porath never agreed to shoulder the financial burden of the pandemic in the event that Vassar was unable to provide the ordinary, usual, expected, and contracted for services.

20.     It is unfair and unlawful for Vassar to retain tuition and fees for campus-based in-person education and services not being provided and to pass the losses on to the students.

21.     Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Defendant's decision to retain the tuition and fees, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such services.

22.     Ms. Ben-Porath brings this class action for damages, restitution, and declaratory relief resulting from Vassar's retention of the tuition and fees paid by Ms. Ben-Porath and the other putative Class Members for campus-based, in-person educational services not being provided.

23.     Specifically, this lawsuit seeks disgorgement of the prorated, unused amounts of the fees that Ms. Ben-Porath and other putative Class Members paid, but for which they (or the students on behalf of whom they paid) were not provided the benefit, as well as a partial pro-rated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

4

24.    Plaintiff Ben-Porath also seeks, in the alternative to her contract claims, an equitable return of tuition and fees that she pre-paid in advance of the Spring 2020 semester that resulted in Vassar being unjust enriched as a result of actions they took during the pandemic or benefits they unjust received. Under principles of equity in New York law, Vassar should not benefit to the detriment of its students.

## PARTIES

25.    Plaintiff Naomi Ben-Porath is a citizen of Massachusetts who resides in Lowell, Massachusetts, and was enrolled in Vassar during the Spring 2020 semester.

26.    Prior to mid-March 2020, Ms. Ben-Porath utilized on campus resources like the Counseling Center

27.    She paid full tuition and fees for the Spring 2020 semester.

28.    Halfway through the Spring Semester, Ms. Ben-Porath was forced to take her classes remotely, lost access to campus, and failed to receive various on-campus services for which she paid – including those during previous semesters she received and those she received during the beginning of the Spring 2020 semester.

29.    Plaintiff Ben-Porath enrolled at Vassar for the Spring 2020 semester, which was scheduled to run from approximately January 22, 2020, through May 19, 2020.

30.    Plaintiff Ben-Porath did not have access to campus after March 6, 2020, because the college closed for spring break, and after that, the campus was effectively closed due to COVID-19.

31.    Plaintiff Ben-Porath paid tuition and fees for the Spring 2020 semester, the benefits of which she lost because Vassar closed the campus and cut off access to on-campus services, facilities, and extra-curricular activities.

5

32.     Defendant Vassar College is a private liberal arts college, founded in 1861, with campuses located in Poughkeepsie, New York, and its principal place of business at 124 Raymond Avenue, Poughkeepsie, New York 12604.

## JURISDICTION AND VENUE

33.     This Court has personal jurisdiction over Defendant because it operates a business in Dutchess County and is the proper venue for this action because Defendant resides in this County and is a citizen of New York.

34.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

## FACTUAL ALLEGATIONS

35.      Every Vassar student, including Plaintiff Ben-Porath, is required to pay tuition and some form of mandatory fees. The Spring 2020 semester was scheduled to commence on January 22, 2020, and end on May 19, 2020.[3]

36.     Tuition for the Spring 2020 semester was approximately $28,955.00 for undergraduate students.[4]

37.     Plaintiff Ben-Porath paid $28,955.00 in tuition, paid a mandatory health fee of $240.00, and paid a mandatory student activity fee of $190.00. [5]

38.     Vassar touted the campus, facilities, and more to prospective students: "Vassar

---

[3] https://catalogue.vassar.edu/content.php?catoid=33&navoid=6158#
[4] .https://catalogue.vassar.edu/content.php?catoid=33&navoid=6226
[5] *See* Plaintiff's Student Invoice.

6

College is a highly selective, residential, coeducational liberal arts college… Vassar is renowned for pioneering achievements in education, for its long history of curricular innovation, and for the beauty of its campus."[6]

39.     Vassar sold prospective students on the idea of a communal campus: "Vassar College is a community of special character in which people of divergent views and backgrounds come together to study, work, and live in the proud tradition of a residential liberal arts college."[7]

40.     Plaintiff and members of the Class paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the entirety of the semester.

41.     Plaintiff and members of the class also are required to pay mandatory fees. These mandatory fees provide students access to a multitude of Vassar's on-campus facilities, resources, events, and services as evidenced by the language of many Vassar publications, including, but not limited to the 2019-2020 Course Catalogue.

42.     Vassar's 2019-2020 Course Catalogue[8], lays out the Mandatory Fees a student could be required to pay. Such fees include:

   a) Student Activity Fee: is required for all full-time students. These funds are transferred to the Vassar Student Association for use by its various organizations.

   b) Health Service Fee: is required for all full-time students. The fee covers limited medical services as provided by the college's infirmary.

as well as any program specific fees.

---

[6] https://web.archive.org/web/20191117233433/https://www.vassar.edu/about/ (Nov. 17, 2019)
[7] https://web.archive.org/web/20191117233440/https://www.vassar.edu/campuslife/)
[8] https://web.archive.org/web/20200924170159/https://catalogue.vassar.edu/content.php?catoid=33&navoid=6226

43.    The Course Catalog[9] states:

"The libraries at Vassar are extraordinary and rank among the very best liberal arts collections in the United Stats both in the number of titles (over 1,000,000 volumes) and in their exceptional variety and depth,"

"The Frances Loeb Art Center houses one of the oldest college art collections in the country and has been named one of "the best university art museums in America" by *Architectural Digest."*

"An invaluable resource for the entire community, the Vassar Farm and Ecological Preserve encompasses over 525 acres, most of which are actively managed as an ecological preserve… Located on the preserve, the Priscilla Bullitt Collins Field Station houses a classroom, laboratory, and a weather station."

"The Art Department… offers direct access to Vassar's extraordinary collections as well as courses covering the full range of art worldwide in lecture halls and seminar rooms equipped with state-of-the-art projection systems. The Studio Art program has sculpture and printmaking facilities in Doubleday Studio Arts Building, drawing studios in Ely Hall, and photography, new media, and video and painting studios in New Hackensack, where studio art majors have individual studios."

"The Department of Anthropology, located in Blodgett Hall, has laboratories for archaeology and biological anthropology as well as for digital media and sound analysis. The Archaeology Labs contain equipment for analysis and curation of artifacts, mapping and spatial analyses of field sites, and the identification of animal bones from North American contexts. The Biological Anthropology Labs contain equipment for conducting three-dimensional and virtual reality analyses of primates, and an extensive collection of replica skeletons and brain endocasts from non-human primate species. The Language, Culture and History Lab supports transcription, video editing, digital humanities and "intensive" courses."

"The sciences reside in the Integrated Science Commons, in Rockefeller and Ely halls, and the Class of 1951 Observatory. These buildings have "smart" classrooms, faculty offices, labs, and sophisticated instrumentation specific to each discipline in addition to resources shared across the natural science departments and related interdepartmental and multidisciplinary programs."

"The Athletics and Fitness Center is a 53,000-square-foot facility that includes a 1,200-seat basketball gym, an elevated running track, and a 5,000-square-foot weight training/cardiovascular facility."

---

[9]https://web.archive.org/web/20200924171328/https://catalogue.vassar.edu/content.php?catoid=33&navoid=6229

44.     Vassar's websites state:

"The student Health Service, located in Baldwin House, provides medical and nursing care by qualified personnel including physicians, physician assistants, nurse practitioners and nurses. During the academic year, Health Service hours are 9:00 am–5:00 pm, Monday through Friday, and 12:00 noon - 4.00 pm on Saturday and Sunday."[10]

"Vassar College Counseling Service (VCCS) welcomes students of all backgrounds and experiences. We are here to support you. A variety of services are provided to Vassar students such as individual, couples, and group counseling, crisis intervention, educational programming, consultation, assessment, and referrals to off-campus mental health professionals."[11]

"The Campus Life LGBTQ Center is located in the College Center, Room 213. Drop in to relax on our couches; make yourself a cup of tea or coffee; browse our book and film library; or say hello to the LGBTQ Center Director next door in CC 214. We're open Mon-Fri 9am-5pm, with extended evening and weekend hours during the academic year."[12]

"Drop in to the Women's Center to hang out, read a book or magazine, talk with one of the interns or the director of the center, or pick up some information about local and national resources. Be sure to check out our blog, Ms. Informed, to see what gender-related issues are on the Women's Center interns' minds."[13]

45.     Vassar's official policy documents (i.e., Vassar Course Catalogue, Vassar College Regulations for 2019-2020, Ask Banner Course Search, etc.) contain hundreds of references to Vassar's campus, including through explicit references to campus, buildings on campus, facilities on campus, images of campus, images of students on campus, and other material representations of services that are only available on campus.

---

[10] https://web.archive.org/web/20191018173631/https://healthservice.vassar.edu/about/
[11] https://web.archive.org/web/20191109055925/https://counselingservice.vassar.edu/
[12] https://web.archive.org/web/20190126145100/https://lgbtq.vassar.edu/
[13] https://web.archive.org/web/20191018173458/https://womenscenter.vassar.edu/

46.     Vassar's secondary materials (i.e., marketing materials, recruitment materials, social media accounts, promotional materials, the 2019/2020 First Year Handbook, etc.) similarly contain references to Vassar's services as being fundamentally campus-based ones.

47.     Since its opening in 1861, Vassar has provided campus-based services to enrolled, registered, and payment students.

48.     The same was true during Plaintiff's prior semesters at Vassar, and it was true during the beginning portion of the Spring 2020 semester.

49.     During the registration process at Vassar, Defendant represented and identified physical locations of classes as being on campus at specific buildings – and did not convey those classes as being entirely online – as reflected in the "Ask Banner" aka "Schedule of Class" online search and registration tool, published by Vassar (as reflected visually below):



50.     Plaintiff recalls reviewing course information such as time, physical location (including building and classroom), and instructor within the College's course searching function Ask Banner before choosing her courses for the Spring 2020 semester.

51.     Vassar explicitly references the "Select Format" drop down menu as courses' formats for "Classroom," "Intensive," or "Other."

52.     Vassar's Ask Banner did not provide a course format option of "online" or "online only" courses.

53.     Therefore, Plaintiff and similar situated students expressly searched for and selected classes that contained written representations that their classes would be in "classrooms" on campus – when they searched for and ultimately registered for classes for the Spring 2020 semester.

54.     Based on Vassar's official policy documents, its secondary materials, its past performance, its registration process(es) and representations therein, and what was available in the marketplace at the time Plaintiff contracted with Vassar[14], Plaintiff reasonably expected to receive campus-based, in-person educational services in exchange for the payment of tuition and fees.

55.     Based on Vassar's official policy documents, its secondary materials, its past performance, its registration process and representations therein, and what was available in the marketplace at the time Plaintiff contracted with Vassar, Plaintiff reasonably expected Vassar to provide campus-based, in-person educational services in exchange for the payment of tuition and fees.

56.     Throughout the contract formation stages that Plaintiff went through, she expected Vassar to provide campus-based, in-person educational services in exchange for the payment of tuition and fees.

57.     Throughout the contract formation stages that Plaintiff went through, Vassar expected to provide the same.

58.     Up until March 2020, Vassar expected to provide the same.

---

[14] As detailed in academic research and expected to be detailed in an expert report after discovery, cheaper online programs existed as market alternatives and comparators to Vassar's campus based programs, including (1) cheaper online-only programs at the time the contract was formed, (2) cheaper online-only programs at the time the breach occurred, (3) reduced tuition as a market response to the pandemic including through notable schools, (4) other market responses to COVID, and (5) other economic considerations.

59.    Thus, there was a meeting of the minds as to what educational services Plaintiff would receive in exchange for the payment of tuition and fees.

60.    As stated above, Vassar shut down its campus and moved to a remote platform on March 12, 2020, where it remained for the rest of the Spring 2020 semester, meaning 50% of the Spring semester was spent off-campus with remote online only learning, and with little to no access to any of the facilities, services, or resources the fees charged to Vassar students covered and Vassar was to provide.

61.    For example, students no longer had access to the fitness centers[15] or libraries[16] during the shut-down.

62.    Services such as health and wellness centers[17] and dining services[18] were provided but in a limited capacity.

63.    Various events and access to facilities could not be provided in-person and on-campus as promised Vassar did provide some services virtually, however that is not what Plaintiff paid for or reasonably expected to receive.

64.    Vassar fundamentally did not provide access to campus.

A.  ***Students Are Experiencing Significant Losses, in Many Cases of Borrowed Funds as a Result of Defendant's Conduct***

65.    At Vassar, the median federal loan debt among borrowers who completed their undergraduate degree is $18,625.00.[19] The median monthly federal loan payment (if it were repaid

---

[15] https://www.vassar.edu/president/community/2020/200317-checking-in-and-updates
[16] *Id.*
[17] https://www.vassar.edu/president/community/2020/200313-coronavirus-update
[18] https://www.vassar.edu/president/community/2020/200312-coronavirus-update
[19] https://www.usnews.com/best-colleges/vassar-college-2895/paying

over 10 years at 5.05% interest) for student federal loan borrowers who graduated from Vassar is $197.[20]

66.     In addition, 6% of graduating students at Vassar took out private loans.[21] Students with private loans had an average of $52,939 in private loan debt at graduation.[22]

67.     With the campus shut down for approximately 50% of the semester, Plaintiff Ben-Porath and the proposed Class Members have been deprived of the benefits of the on-campus experience as set forth above. Nevertheless, Vassar has refused to refund any portion of the tuition or Mandatory Fees, despite not providing the on-campus education, services, facilities, and activities, a completely different product from which they paid, contracted for, and reasonably expected to receive.

68.     Plaintiff Ben-Porath and the proposed Class Members are entitled to a refund of the money they paid Vassar for promised on-campus education and experience when none was provided. Students could use that money to pay for expenses, to defray the costs of lost services, or, for students who took out loans, to reduce their loan obligations.

69.     Vassar has retained the value of the monies paid by Plaintiff Ben-Porath and the proposed Class Members for tuition and the Mandatory Fees for the Spring 2020 semester while failing to provide the services for which those monies were paid.

70.     Through this lawsuit, Plaintiff Ben-Porath seeks for herself and the other Class Members: (i) Vassar's disgorgement of the tuition and Mandatory Fees proportionate to the amount of time that remained in the Spring 2020 semester when the campus closed and corresponding

---

[20] *Id.*
[21] *Id.*
[22] *Id.*

campus services were curtailed or ceased being provided and Plaintiff Ben-Porath seeks return of those amounts on behalf of herself and the Class Members as defined below.

## CLASS ACTION ALLEGATIONS

71.     Plaintiff seeks to represent the following class:

> All enrolled Vassar students who paid or were credited with having paid Vassar, Spring Semester 2020 tuition and/or Mandatory Fees and registered for at least one in-person on-campus class, as listed by "Format" as "Classroom" or "Intensive" (the "Class").

72.     Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

73.     Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definitions.

**A. Numerosity.**

74.     The Class members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Although the exact number of Class members is unknown to Plaintiff Ben-Porath at this time and can be ascertained only through appropriate discover, Plaintiff Ben-Porath, upon information and belief, reasonably estimates there around 2,456 total students at Vassar.[23] Thus, there are likely thousands of Class members. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

---

[23] https://web.archive.org/web/20200101053618/https://www.vassar.edu/

**B. Predominance and Commonality.**

75.     This action involves common questions of law and fact that will drive the litigation and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

      a.  Whether Vassar engaged in the conduct alleged herein;

      b.  Whether Vassar accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the Spring 2020 semester;

      c.  Whether Vassar breached its contract with Plaintiff and the proposed Class by transitioning to remote online learning, shutting down its campus, and not providing students with the paid-for live in-person classes and on-campus experience;

      d.  whether Vassar breached its contract with Plaintiff and the proposed Class by transitioning to remote online learning, shutting down its campus, rendering students unable to access most or all of the on-campus facilities and services for which they paid;

      e.  Whether Vassar is unjustly enriched by retaining a portion of the tuition and Mandatory Fee during the period of time Vassar has been closed, and Plaintiff and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fee was paid.

**C. Typicality.**

76.     Plaintiff's claims are typical of those of the other Class Members because Plaintiff and the Class Members each paid for certain costs associated with the Spring 2020 semester at Vassar but were not provided the services that those costs were meant to cover. Plaintiff and other Class Members suffered damages – the loss of their tuition and Mandatory Fees payments– as a direct and proximate result of the wrongful conduct in which Vassar engaged.

### D.  **Adequacy of Representation.**

77.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation. Plaintiff and her counsel intend to vigorously prosecute this action for the benefit of the Class as a whole. Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

### E.  **Superiority.**

78.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Vassar, making it impracticable for Class Members to individually seek redress for Vassar's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT I
### Breach Of Contract as to Fees
### (On Behalf Of Plaintiff and The Class)

79.     Plaintiff hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

81.     Plaintiff and the other Class Members entered into contractual agreements with Defendant, which provided Plaintiff and other Class Members would pay Mandatory Fees – and in exchange Defendant would provide facilities, activities, services, and resources to students.

82.     Defendant provided documents that specifically list the fees that would be assessed to students and detailed the nature of these fee charges.

83.     Such charges include:

a.     Student Activities Fee – "The student activity fee is required for all full-time students. These funds are transferred to the Vassar Student Association for use by its various organizations."[24]

b.     Health and Wellness Fee – "The Health Service fee is required for all full-time students. The fee covers limited medical services as provided by the college's infirmary."[25]

c.     Various Course and program fees depending on majors and areas of studies.[26]

84.     Plaintiff and the other Class members have fulfilled their end of the bargain when

---

[24]https://web.archive.org/web/20200924170159/https://catalogue.vassar.edu/content.php?catoid=33&navoid=6226
[25] Id.
[26] Id.

they paid Defendant's fees for the Spring 2020 semester and complied with the various Vassar policies, rules, regulations, and codes regarding their enrollment.

85.    Vassar failed to provide any in-person student activities after March 6, 2023 and suspended all "on-campus events" and "in-person events."[27]

86.    Vassar significantly "reduce[d] activity [and access] to campus."

87.    Vassar's health, mental health and advocacy services operated under significantly limited capacities after March 12, 2023 and many, if not all of its services, shifted to online services[28].

88.    Vassar's Student Health Services operated under significantly limited capacities after March 12, 2023.

89.    Defendant breached its contract with Plaintiff and the other Class Members when it moved classes online, cancelled on-campus events and activities, effectively closed campus, and stopped providing facilities, activities, services, and resources for which fees were paid, and refused to provide any refunds.

90.    In doing so, Defendant has and continues to deprive Plaintiff and the other Class Members from the benefit of their bargains with Defendant associated with those specific fees.

91.    Even if performance is excused, Defendant cannot retain those Mandatory Fees for facilities, activities, services, and resources it did not provide for the remainder of the Spring 2020 Semester.

92.    By retaining all of the subject fees while not providing facilities, activities, services, and resources, throughout the Spring 2020 semester, Defendant has breached the implied duty of

---

[27] https://www.vassar.edu/president/community/2020/200312-coronavirus-update

[28] *Id.*

18

good faith and fair dealing embedded in its contractual agreements with Plaintiff and other Class Members.

93.     Defendant retained monies paid by and which belong to Plaintiff and the other Class Members, without providing them the benefit of their bargain.

94.     Plaintiff and the other Class Members have been damaged as a direct and proximate result of Defendant's breach.

95.     Plaintiff and the other Class Members are entitled to damages, including but not limited to Mandatory Fee refunds for services that were completely unavailable and partial refunds for services that were partially available.

96.     In the alternative, Plaintiff and the other Class Members are entitled to an equitable remedy-disgorgement of the pro-rated, unused amounts of Mandatory Fees that Defendant has already charged, and that Plaintiff and the other Class Members have paid.

97.     As a result of Defendant's breaches, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT II
### Breach of Implied Contract as to Tuition
### (On Behalf of The Class)

98.     Plaintiff hereby incorporate by reference the allegation contained in all preceding paragraphs of this complaint.

99.     Plaintiff and the Class Members entered into a contract as to tuition, wherein Plaintiff paid tuition, and Defendant agreed to provide in-person and on-campus classes, access to facilities, and services.

100.    There is no single integrated document that reflects all of Vassar's covenants and promises as part of the student-university agreement.

101.    The covenants and promises required by the parties as part of that College-Student contract – namely those obligated by Vassar – were detailed and conveyed over the course of numerous documents and materials that were exchanged through the application, acceptance, enrollment, registration, and payment processes, including policy documents and standardized documents.

102.    These documents, along with past performance, the registration process, past performance, and the availability of cheaper online-only programs, let Plaintiff to reasonably expect and understand that she was paying tuition for campus-based, in-person educational services.

103.    Many of Vassar's official policy documents are standardized or policy documents like acceptance letters, the Course Catalogue, Ask Banner, the First-Year Handbook, College Regulations, handbooks, bulletins, the enrollment acknowledgment, and other documents and materials, which conveyed the respective obligations of the parties, including the obligations on Vassar to provide on-campus education and services to students like Plaintiff.

104.    For example, Vassar College Regulations for 2019-2020 is a 110-page official policy and College document that lists among other things, "Student rights, Privileges, and Responsibilities" as an official policy document of Vassar that applies to all students and utilizes the term "campus" more than 150 times. In that governing policy document, "Article III, Section 1. Student Rights and Responsibilities," Vassar publicly states that students are entitled to "freedom of discussion, inquiry and expression in and outside of classes…" Thus, Vassar considered physical access to classes as being fundamental to its arrangement with students. This document goes further in several other descriptions of rights and responsibilities including detailing "fair and equal access to library resources" and the "loss of privileges: the withdrawal of

one or more campus privileges, including ut not limited to the use of services, participation in a program, event, or activities for a specific period of time, or removal …" as a college sanction that could only be applied about due process.

105.    Students, like Plaintiff, also reviewed other documents, materials, and representations from Vassar reflecting the nature of the educational services and relied upon past experiences and past performance to form a reasonable expectation of the education and services they would receive.

106.    For example, the 2019-2020 Undergraduate Catalogue contains numerous references to "campus" thereby reinforcing the foundational understanding that Vassar was a campus-based educational institution with access to in-person classes and a suite of on-campus and in-person services, facilities, and activities, as well as the Vassar community.

107.    Visual images and representations of student life at Vassar conveyed these same foundational understandings, including images of campus, images of students working together, images of events and facilities, images of campus buildings, images of campus labs, images of campus-based technologies, and other similar visuals.

108.    In fact, undergraduate students like Plaintiff at Vassar are obligated to live on campus throughout the duration of their undergraduate studies to create that community and allow Vassar to provide those services in-person.[29]

109.    In its Mission Statement, Vassar conveys part of its mission is to "Vassar supports a high standard of engagement in teaching and learning, scholarship and artistic endeavor; a broad and deep curriculum and a residential campus that fosters a learning community."[30] Thus, again,

---

[29] id

[30] https://web.archive.org/web/20191117233433/https://www.vassar.edu/about/#mission

Vassar's policy public statements consider "campus" as fundamental to the student-college relationship and the nature of its services – precisely the things that Plaintiff and similarly situated students were not able to receive.

110.    These standardized documents and policies regularly reflected that Vassar would provide access to "campus," its "classrooms," "campus" facilities, "campus services," [31]and other in-person, campus-based services, opportunities, and experiences.

111.    Students like Plaintiff that paid tuition and the Mandatory Fees reasonably expected to receive campus, community, and in-person access and classes when they enrolled at Vassar and registered for classes in the Spring 2020 semester.

112.    Before March 2020, Vassar expected to and intended to provide on-campus, in-person educational services to enrolled students who paid tuition and fees.

113.    The parties' expectations were built around prior course of conduct and through critical contract formation stages: from recruitment to application, acceptance, admission, enrollment, registration, and payment.

114.    The documents exchanged during these critical contract formation stages reflected "campus", images of campus, images of students on campus, references to tangible things on campus, references to buildings on campus, references to technologies on campus, and other references to students on campus.

115.    The covenants and promises of the student-college agreement were promised and conveyed to students like Plaintiff Ben-Porath prior to March 2020.

116.    The student-college agreement was formed in the years and months prior to the

---

[31] *See e.g., "Vassar College* The 2019/20 First-Year Handbook." ("Thus, the materials in this book are intended to help you make good use of the time between now and when you arrive on campus …"); id. (using "campus" 60 times and "community" more than 45 times).

events of March 2020 and the covenants, promises, intent, and expectations of the parties were formed through all the contract formation stages – application, admission, acceptance, deposit, enrollment, registration, and payment.

117.    Plaintiff's expectations were based in substantial part on Vassar's own marketing efforts highlighting the campus-based experience and personal interactions with faculty and staff as the reason to attend Vassar.

118.    Plaintiff's expectations were based in substantial part on official policy documents and websites from Vassar about its campus-based services.

119.    Documents like those referenced in this complaint reiterate the use of campus and community to convey the same implicit concept: Vassar offers its services in-person, on-campus, and face-to-face with other students.

120.    Under the contract, Plaintiff and the Class Members registered for on-campus, in-person courses and access to campus and its facilities.

121.    Plaintiff and the Class Members utilized Defendant's online portal Ask Banner to review and register for courses. Plaintiff and the Class Members were provided with information such as the course's physical location (building and classroom), its meeting time, and its instructor prior to being able to select whether or not to register.

122.    Courses were listed as "Classroom," "Intensive," or "Other" however no online or remote format was listed as available.

123.    It was the reasonable expectations of Plaintiff and Class Members that Defendant would provide them with on-campus, as opposed to online, use of Defendant's facilities and services in accordance with Defendant's usual and customary practice of providing on-campus services, facilities, and experiences.

124.    Vassar has provided access to campus for over 150 years to its students, except for those enrolled during the Spring 2020 semester.

125.    Plaintiff and Class Members accepted and intended to use and enjoy Defendant's on-campus community, services, and facilities.

126.    Plaintiff and the Class Members have fulfilled all expectations by registering and paying for access to on-campus facilities and services.

127.    Plaintiff and the Class Members have paid Defendant for all Spring 2020 term financial assessments.

128.    However, Defendant breached the implied contract, failed to provide those on-campus classes, services, experiences, and access, and have not otherwise performed as required by the implied-in-fact contract between Plaintiff and the Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has deprived and continue to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

129.    Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach. The online classes, services, and failure to provide campus access by Defendant are objectively different from, worse than, and less valuable than the on-campus classes for which the parties entered into an implied-in-fact contract.

130.    Plaintiff and the Class Members are entitled to damages, including but not limited to tuition and Mandatory Fee refunds.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

131.     Plaintiff hereby incorporate by reference the factual allegation paragraphs of this complaint.

132.     Plaintiff pleads this Count in the alternative to Counts I and II.

133.     By paying Vassar tuition and the Mandatory Fees for the Spring semester, Vassar agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout those affected semesters.

134.     Vassar has retained the benefits of the amount of tuition and fees that Plaintiff has provided – without providing the benefits that Plaintiff is owed.

135.     For example, Vassar failed to provide Plaintiff and Class Member access to any on-campus facility after middle of March 2020. Yet Vassar assessed Plaintiff with tuition and fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

136.     Plaintiff was not able to access such facilities or services remotely.

137.     Plaintiff was unable to access campus or its facilities.

138.     Plaintiff paid tuition and fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Vassar have previously marketed, promoted, or made available prior to Covid-19.

139.     Vassar has been unjustly enriched by Plaintiff payment of tuition and fees.

140.     Vassar has used Plaintiffs' monies to cover the costs of maintenance, facilities, buildings, property, plant, and equipment, but has not provided the same to Plaintiff and similarly situated students.

141.     Despite not being able to provide such services, Vassar failed to provide reimbursements for tuition and fees dispute the diminished services it provided and the reduced

benefits associated with the tuition and fees.

142.    Vassar has been unjustly enriched by retaining tuition and fees that were pre-paid in advance of Vassar actually providing the services.

143.    Vassar has been unjustly enriched by holding tuition and fees in its coffers for weeks or months before making the ultimate decision to retain them for the substantially different services it previously provided to Plaintiffs.

144.    Vassar elected to impose its economic strength on Plaintiff and similarly situated students such that the students would bear the costs of the pandemic, despite Vassar's financial gains, cost-savings measures, increases in assets, increases in endowment value, and decreases in expenditures related to instruction.

145.    Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

146.    It is unjust for Vassar to keep funds it charged and collected in advance for promised services Vassar ultimately did not render.

147.    Defendant was advantaged by the pandemic during the Spring 2020 semester because it kept all of Plaintiff and other students' tuition and fee payments but yet was only able to provide lesser value services, including online only instruction.

148.    The cost of providing online-only instruction was significantly less than campus-based program.

149.    It is fundamentally unfair to require students to bear the costs of paying for property, plant, or equipment that was unavailable to them during the pandemic and that would only be available to other students after the pandemic-response policies ceased.

150.    In fact, Defendant set tuition and fees such that it pays for a significant amount of

campus-based services including buildings, technologies, labs, libraries, plant, property, equipment, and other services for which there is no reasonable online equivalent.

151.    Defendant took in pre-paid tuition and fees, as well as government aid, and forced Plaintiff and her fellow students to shoulder the loss associated with the Spring 2020 semester and the pandemic.

152.    Plaintiff did not agree to shoulder the financial burden of the pandemic.

153.    Vassar was in a better position to balance the equities of the financial consequences of the pandemic and ensure that students were not forced to incur financial strain.

154.    Numerous schools of similar stature and costs provided discounts, credits, refunds, additional scholarships, or other measures to balance the financial equities of the pandemic.

155.    Vassar did not.

156.    Upon information and belief, Defendant took cost saving measures but failed to pass on those savings to Plaintiff and the class.

157.    Upon information and belief, Defendant earned considerable amounts of money through investments and their endowment but failed to pass on those earnings to Plaintiff and the class.

158.    Vassar has been unjustly enriched to the detriment of Plaintiff as a result of the financial situations that occurred during the pandemic including during the Spring 2020 semester.

159.    Vassar owes Plaintiff and putative class members in an amount to be determined under the appropriate case law including a partial refund of tuition and fees based on principles of equity, restitution, and other quasi-contract principles available under New York law.

## **PRAYER FOR RELIEF**

160.    WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor

of Plaintiff and the Class against Defendant as follows:

(a)     For an order certifying the Class under Rule 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be determined by the Court;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit;

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 4, 2023

Respectfully submitted,


\_\_\_\_\_/s/_____
**LEEDS BROWN LAW, P.C.**
Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
Brett R. Cohen, Esq.
Anthony M. Alesandro, Esq.

One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com
bcohen@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

*Counsel for Plaintiff and Proposed Class*