UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAOMI BEN-PORATH, *on behalf of herself and all others similarly situated*,

                Plaintiff,

          v.

VASSAR COLLEGE,

                Defendant.

Civil Action No.
7:23-cv-08713-CS

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION PURSUANT TO LOCAL CIVIL RULE 6.3

Dated: March 27, 2025

BOND, SCHOENECK & KING, PLLC

Suzanne Messer, Esq.
Mallory A. Campbell, Esq.
*Attorneys for Defendant Vassar College*
600 Third Avenue, 22nd Floor
New York, New York 10016-1915
Telephone: (646) 253-2300
mcampbell@bsk.com
messers@bsk.com

i

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

CONCLUSION............................................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Croce v. St. Joseph's College*,
 219 A.D.3d 693 (2d Dept. 2021) ..............................................................................1, 2, 3, 4, 5

*In re Fosamax Prods. Liab. Litig.*,
 No. 06 MD 1789 (JFK), 2011 U.S. Dist. LEXIS 106074 (S.D.N.Y. Sept. 15, 2011) ...............1

*Hall-Landers v. New York Univ.*,
 No. 20 Civ. 03250, 2025 U.S. Dist. LEXIS 55681 (S.D.N.Y. Mar. 26, 2025)......................4, 5

*McCudden v. Canisius University*,
 CA 23-01865, 2025 N.Y. App. Div. LEXIS 1466 (4th Dept. Mar. 14, 2025) ..............1, 3, 4, 5

*Pahuta v. Massey-Ferguson*,
 170 F.3d 125 (2d Cir. 1998)......................................................................................................2

*Rynasko v. New York University*,
 63 F.4th 186 (2d Cir. 2019) ........................................................................................1, 3, 4, 5

**PRELIMINARY STATEMENT**

Defendant Vassar College submits this memorandum of law in support of its motion for reconsideration of the Court's denial of Vassar's motion for judgment on the pleadings.

On March 14, 2025, the Court issued a bench ruling denying Vassar's motion for judgment on the pleadings.[1] In doing so, however, the Court appears to have overlooked the decision of the Appellate Division, Second Department in *Croce v. St. Joseph's College*, 219 A.D.3d 693 (2d Dept. 2021), which affirmed dismissal of a COVID-19 tuition refund case in which the plaintiff alleged substantially similar facts as are alleged by the Plaintiff here. While Defendant discussed the Second Department's *Croce* decision in its motion papers, the Court did not address it in its Bench Ruling.

Further, on the afternoon of March 14 – at or around the time of the Bench Ruling in this case, the Appellate Division, Fourth Department issued a decision in *McCudden v. Canisius University,* CA 23-01865, 2025 N.Y. App. Div. LEXIS 1466, at *4 (4th Dept. Mar. 14, 2025), which rejected the plaintiff student's reliance on *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. 2019), and adhered to the Second Department's holding in *Croce.* Because the issues in this action are those of New York common law, this Court must adhere to the holdings of *Croce* and *McCudden*, which require dismissal of Plaintiff's complaint.[2]

**ARGUMENT**

Reconsideration is appropriate where a court has overlooked controlling decisions presented in the underlying motion which, had they been considered, might have altered the result of the initial decision. *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 (JFK), 2011

---

[1] A copy of the transcript of the March 14 Bench Ruling is appended hereto as Appendix A.

[2] Vassar does not seek reconsideration of that portion of the Bench Ruling that dismissed Plaintiff's unjust enrichment claim.

1

U.S. Dist. LEXIS 106074, at *8 (S.D.N.Y. Sept. 15, 2011) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Federal courts are "bound…to apply the law as interpreted by New York's intermediate appellate courts…unless [they] find persuasive evidence that the New York Court of Appeals…would reach a different conclusion." *Pahuta v. Massey-Ferguson*, 170 F.3d 125 (2d Cir. 1998) (citing *Grand Light & Supply Co. v. Honeywell, Inc.,* 771 F.2d 672, 678 (2d Cir. 1985) (additional citations omitted)).

In *Croce*, the Second Department explained:

> "[t]he relationship between a university and a student is contractual in nature" (*Sweeney v. Columbia Univ.,* 270 A.D.2d 335, 336[2000]). Although "'[t]he rights and obligations of the parties as contained in the [school's] bulletins, circulars and regulations made available to the student, become a part of this contract' " (*Clogher v. New York Med. Coll.,* 112 A.D.3d 574, 575 [2013] quoting *Vought v. Teachers Coll., Columbia Univ.,* 127 A.D.2d 654, 655 [1987]), "**only specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract**" (*Keefe v. New York Law School,* 71 A.D.3d 569, 570 [2010]; *see Rynasko v. New York Univ.,* 63 F.4th 186 [2d Cir. 2023]).

*Croce*, 219 A.D.3d at 695 (emphasis added). In *Croce*, the plaintiff alleged that

> …a promise to provide in-person, on-campus educational services was implicit in the defendant's Mission Statement to "help[] students develop as whole persons by providing individual attention, interactive teaching, and opportunities for active participation in academic and extra-curricular programs"; provisions of the Student Handbook providing that "Students learn and grow in an enriched environment of co-curricular, extra-curricular and experiential learning opportunity supported by staff and faculty"; and marketing materials contained on the college's website depicting campus facilities and encouraging prospective students to visit the college's campus.

219 A.D.3d at 695 (citing *Sinanovic v. Wagner Coll.,* 2022 U.S. Dist. LEXIS 180200, *13 (E.D.N.Y.); *Marbury v. Pace Univ.*, 20-CV-3210 (JMF), 2021 U.S. Dist. LEXIS 227414, *6 (S.D.N.Y. Nov. 24, 2021); *In re Columbia Tuition Refund Action,* 523 F.Supp.3d 414, 422–423

(S.D.N.Y. 2021)). The Second Department rejected these allegations, finding them insufficient to allege that St. Joseph's made a promise to its students to provide in-person instruction. *Croce*, 219 A.D.3d at 696.

Similarly, the plaintiff in *McCudden* was a student seeking a refund of tuition and fees he paid to Canisius University for the Spring 2020 semester because Canisius transitioned its operations, including instruction and student services, to remote modalities because of the coronavirus pandemic. On March 14, 2025, the Fourth Department affirmed the Erie County Supreme Court's dismissal of the plaintiff's tuition breach of contract claim and plaintiff's unjust enrichment claim. In doing so, the Fourth Department joined the Second Department as the only other Appellate Division court to have decided these "COVID refund" cases. The Fourth Department held that Mr. McCudden's breach of contract claim, which was based on words and phrases on, *inter alia*, the University's website and social media posts and in course descriptions and admissions applications, contained "only conclusory allegations of the implied contract to provide *exclusively* in-person learning during the spring 2020 semester, which are unsupported by any specific promise that is material to plaintiff's relationship with Canisius." 2025 N.Y. App. Div. LEXIS 1466, at *4 (quoting *Croce*, 219 A.D.3d at 695) (emphasis in original).

In its Bench Ruling in this action, the Court relied heavily on the Second Circuit's decision in *Rynasko v. New York University,* 63 F.4th 186 (2d Cir. 2019). However, in *McCudden, t*he Fourth Department <u>rejected</u> the plaintiff's reliance on *Rynasko*, holding that:

> …the Second Department's approach in *Croce*…adheres to the well-established New York law requiring a *specific* promise by a defendant to provide *exclusively* in-person learning (*see* 219 AD3d at 695-96). In *Croce*, by citing to *Rynasko* and yet referring no fewer than three times to *exclusively* in-person learning, the Second Department implicitly rejected the idea that an implied contract could be established merely by a promise to provide *generally* in-person courses- i.e., one that was not a sufficiently specific promise to sustain such a claim (*see Croce*, 219 AD3d at 695-96).

3

21387611

*McCudden*, 2025 N.Y. App. Div. LEXIS 1466, at *6 (emphasis in original).

The Fourth Department further held that Mr. McCudden's complaint ran afoul of New York's prohibition on educational malpractice claims.

> [T]he requirement that there be a *specific* promise is consistent with the broader legal principles of judicial review applicable in the present context, inasmuch as permitting such a cause of action on the basis that there was merely a promise of *generally* in-person courses necessarily would require the courts to parse vague promises in an effort to ascertain the extent and relative value of the education provided by a defendant. This is a task from which the courts of this state have emphatically refrained…As the Second Department recognized in *Croce,* the same policy of non-interference with, and deference to, the decisions of educational institutions underlies the law's requirement that, in a cause of action for breach of contract against an educational institution, a *specific* promise of performance must be alleged…Thus, unlike our dissenting colleagues, we opt to follow the Second Department's approach in *Croce* as the accurate elucidation of New York law on this issue…

*McCudden*, 2025 N.Y. App. Div. LEXIS 1466, at *6-7 (citations omitted). The Fourth Department further explained:

> It is precisely…the propriety of [the University's] decision to cease all in-person learning, as opposed to some or none, that plaintiff seeks to put in issue here, and that the plaintiff sought to do in *Croce*. Deference to that decision might not be required if plaintiff had alleged, and sought to establish, a specific promise by defendant to provide an exclusively in-person education, but here they merely alleged only a general promise to provide some vague form of in-person education, the precise contours of which would require deference.

*Id.*, at *7-8.

In addition to the decisions in *McCudden* and *Croce*, just yesterday, Judge Daniels issued a decision in *Hall-Landers v. New York Univ.*, 20 Civ. 03250, 2025 U.S. Dist. LEXIS 55681 (S.D.N.Y. Mar. 26, 2025) (GBD)(SLC). Ms. Hall-Landers is the student-daughter of Christina Rynasko, the original parent plaintiff. The Second Circuit determined that Ms. Rynasko lacked standing in its April 2021 decision, and Hall-Landers was added as the named plaintiff. *Rynasko*, 63 F.4th at 193. After the case was remanded to this Court, the plaintiff moved for

class certification, and Magistrate Judge Cave issued a Report and Recommendation in which she recommended that the plaintiff's motion be denied. In his March 26 decision, Judge Daniels adopted the Report and Recommendation. In doing so, he held that the statements contained in NYU's marketing materials "regarding the benefits of attending school in New York City, NYU's on-campus resources, and hands-on experience at NYU, including studios, laboratories, athletic and recreational facilities, student centers, [and] student clubs and organizations" were "not specific enough to establish a contractual right." *Id.*, at *25-26 (citations omitted). Rather, the materials plaintiff identified concerning "over 400 clubs and organizations, a list of intramural leagues, and a general description of a variety of opportunities and resources that could be available to students, as well as the general benefits of attending school n New York City," were "examples of mere opinion or puffery that is too vague to be enforced as a contract." *Id.* at *26-27 (citations omitted). Judge Daniels held that "Hall-Landers identifies no specific statement in any of NYU's university-wide materials that promises uninterrupted in-person teaching or 'any express language promising the certain specified service of in-person classes.'" *Id.*, at *27 (quoting *Zagoria v. New York Univ.*, No. 20 Civ. 3610 (S.D.N.Y. Mar. 17, 2021)).

The pleadings in this case are strikingly similar to those in *McCudden* and *Croce*. The only two Appellate Divisions to have reviewed motions to dismiss complaints seeking tuition refunds have dismissed those complaints because they have not sufficiently alleged a specific promise of exclusively in-person, on-campus instruction. These courts have rejected the Second Circuit's interpretation of New York law that was set forth in *Rynasko*. Judge Daniels followed suit in his adoption of Magistrate Judge Cave's Report and Recommendation. This Court is bound to do the same.

5

21387611

## **CONCLUSION**

For the foregoing reasons, Vassar's motion for reconsideration should be granted, and its motion for judgment on the pleadings should be granted.

Dated:  March 27, 2025                         BOND, SCHOENECK & KING, PLLC

                                               By:   */s/Suzanne Messer*
                                                     Suzanne Messer
                                                     Mallory Campbell
                                               *ATTORNEYS FOR DEFENDANT*
                                               VASSAR COLLEGE
                                               600 Third Avenue, 22nd Floor
                                               New York, NY 10016
                                               (646) 253-2330
                                               smesser@bsk.com
                                               mcampbell@bsk.com

21387611

**CERTIFICATE OF COMPLIANCE**

    I, Suzanne M. Messer, Esq., attorney for Defendant VASSAR COLLEGE, does hereby certify pursuant to Local Rule 7.1(f) that the aforementioned memorandum of law was prepared using Microsoft Word processing software and that the word count function of that software, applied specifically to include all text, including headings, footnotes, and quotations, indicates that the attached memorandum contains 1697 words in a proportionately-sized font.


Dated:  March 27, 2025                                */s/Suzanne M. Messer*
                                                              Suzanne M. Messer

21387611